**DAVID J. HOLDSWORTH** (4052)
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| MUMTAZ ABDUL MULLAHKHEL, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF UTAH, UTAH STATE DEPARTMENT OF TRANSPORTATION, | : | |
| | : | Civil No. |
| | : | |
| Defendant. | : | Judge |

Mumtaz Abdul Mullahkhel, Plaintiff herein, complains against the State of Utah, Utah Department of Transportation, demands trial by jury and, as and for causes of action, alleges as follows:

## I.  PARTIES

1.  Plaintiff Mumtaz Abdul Mullahkhel (hereinafter "Plaintiff") is an individual, a United States citizen and a resident of the State of Utah, who at all times relevant hereto, was an employee of the Utah State Department of Transportation.

2. The Defendant is the State of Utah, specifically the Utah State Department of Transportation. At all times relevant hereto, the Utah State Department of Transportation (hereinafter "Defendant" or "UDOT"), employed 15 or more employees.

3. On July 29, 2013, Plaintiff filed a Charge of Discrimination with the Utah Antidiscrimination and Labor Division ("UALD") of the Utah Labor Commission in which he alleged that Defendant had discriminated against him and was discriminating against him based on his race, national origin and religion, and that Defendant had subjected him and was subjecting him to unlawful retaliation.

4. Plaintiff filed his Charge of Discrimination within 180 days from the date of the last alleged harm. Thus, all jurisdictional requirements have been met as required by Title VII of the Civil Rights Act of 1964, as amended.

## II. TYPES OF DISCRIMINATION ALLEGED

5. Plaintiff, by and through his counsel of record, David J. Holdsworth, files this Complaint against the Defendant alleging violations of Title VII of the Civil Rights Act of 1964, as amended, which provides that it is unlawful to discriminate against an employee in his employment on the basis of his race, national origin, and religion and to retaliate against an employee on the basis of the employee's engaging in protected activity.

### III.  STATEMENT OF FACTS AND CLAIMS

### A. STATEMENT OF FACTS

6. Plaintiff filed his Charge of Discrimination on July 29, 2013.  The Court may consider for its determination all actions, events and decisions that occurred between January 30, 2013, the 180-day jurisdictional mark and the date of filing.  The Court may give weight for evidentiary purposes to events occurring prior to January 30, 2013.  *See National R.R.  Passenger Corp. v. Morgan,* 562 U.S. 101 (2002).

7. Plaintiff is of Afghan race.

8. Plaintiff is of Middle Eastern (Afghan) national origin.

9. Plaintiff holds Islamic religious beliefs.

10. Plaintiff was hired by Defendant in 2007.

11. Plaintiff alleges that, during the applicable period of his employment, UDOT has subjected him to ongoing harassment and discrimination on the basis of his race, national origin and religion from supervisors/managers, Leone Gibson ("Gibson") and Tim Boschert ("Boschert").

12. Plaintiff alleges that Gibson frequently snubbed him, excluded him from training, excluded him from staff meetings, excluded him from tours, excluded him from contract appointments and meetings, and subjected him to negative and/or offensive comments by Gibson regarding his race, national origin and religion.

For example, Plaintiff alleges that in a September 2007 meeting which Gibson and Plaintiff attended, Gibson stated "Minorities are taking over America and they have more rights than the rest of us."

13. Plaintiff alleges that, in November 2007, during a meeting with Gibson, Gibson informed him that she was prohibiting him from contacting his spouse on his cell phone and remarked that, "You're always fasting, 45 days or whatever."

14. Plaintiff alleges that in December 2007, he informed Gibson that he needed to take a day off as a religious holiday. He alleges that Gibson replied "I have a problem with that. Your work takes precedence over your religion. If you want [to keep] your job, you better be here."

15. Plaintiff alleges that in January 2008, he complained to a Department of Human Resources representative about Gibson's comments and treatment toward him.

16. Plaintiff alleges that UDOT management did not act on his complaint and that management did not take prompt and effective remedial action.

17. Plaintiff alleges that, after he complained to the Department of Human Resources about alleged discriminatory treatment by Gibson, UDOT took adverse action against him.

18. Plaintiff alleges that, in August 2011, Chris Haycock ("Haycock") accused him of falsifying a signature regarding an onsite inspection and, two days later, Defendant disciplined him by suspending him for two days.

19. Plaintiff alleges that Haycock had previously told him to use Haycock's signature on the inspection form in order to expedite the inspection and, therefore, Defendant had no legitimate reason to discipline or suspend him for allegedly falsifying a signature regarding an onsite inspection.

20. Plaintiff alleges that, following his suspension, Defendant moved him from the position of Compliance Officer to the position of Program Manager. He alleges Defendant denied him the same responsibilities which were given to others who held the position of Program Manager and did not give Plaintiff the same raises as it gave others who served in the position of Program Manager. Plaintiff alleges Gibson even forbade Plaintiff from talking to the two other employees in the same position.

21. Plaintiff alleges that in August 2012, Gibson retired. Plaintiff alleges that, upon Gibson's retirement, Defendant retaliated against him by not even allowing him the opportunity to apply for Gibson's position. Bill Lawrence ("Lawrence") had previously told Plaintiff, "You're next in line for the Director's position." But he alleges that Defendant filled the Director position left open by Gibson's retirement with Tim Boschert ("Boschert"), whom Plaintiff alleges is not of

his protected class and had fewer qualifications and less experience than Plaintiff (Plaintiff had, in fact, trained Boschert).

22. Plaintiff alleges that in March 2013, Gibson returned to UDOT as a full time consultant. Plaintiff alleges that, upon Gibson's return, Boschert began to make derogatory comments toward Plaintiff, which related to his race, national origin and religion, such as "I won't go to Turkey, I don't like those kind of people," "There's the sandbox, go play in it," "Pork is so tasty. You don't know what you're missing," "We know where you stand on security," and "Do you want a bacon sandwich?," and "Do you want to quit? It can be arranged in five minutes."

23. Plaintiff alleges that, in early June 2013, he met with Boschert to participate in a regularly scheduled performance review. He alleges that he and Boschert discussed and reached an agreement as to upcoming plans and goals within the review.

24. Plaintiff alleges that, shortly after discussing the performance review with Plaintiff, Boschert falsely accused Plaintiff of subsequently and improperly changing information on the performance review.

25. Plaintiff alleges that Boschert's accusations were false, were discriminatory and retaliatory.

26. Plaintiff alleges that on June 14, 2013, he sent an email to Boschert and human resource representative Carlos Rodriguez ("Rodriguez") in which he complained that he was "tired" of supervisors making negative comments about him and treating him adversely because of his race, national origin and religion.

27. Plaintiff alleges that, soon thereafter, Boschert put Plaintiff on "check in/check out" status—meaning, that Plaintiff had to account for and/or report his status and location at all times during the work day. Plaintiff alleges no one not of his protected class at UDOT was required to do that.

28. Plaintiff alleges that, because management was not acting on his complaints, on July 18, 2013, he submitted a request to Carlos Rodriguez to be transferred to a different position with UDOT. Plaintiff asked for a transfer to the Civil Rights Division. Carlos Rodriguez ("Rodriguez") informed Plaintiff that the Department would act on his request. Rodriguez assured Plaintiff that any transfer would be within the same building and would be to a similar type of work and to a similar work setting. Rodriguez told Plaintiff to keep such information as to the impending transfer "hush-hush".

29. Plaintiff alleges that Rodriguez facilitated the request to be transferred, but that Defendant transferred him out of his "white collar" position in the headquarters building to a "blue collar" position out of the same building and into a

UDOT warehouse, which required more physically strenuous work. Plaintiff alleges the transfer to this particular type of work and workplace was retaliatory for having complained of discrimination.

30. Plaintiff reluctantly accepted the transfer, but soon discovered that his responsibilities were reduced, and his career path was destroyed.

31. Plaintiff alleges that his work in the warehouse caused him to develop a work-related injury of carpal tunnel syndrome, which caused him serious pain and dysfunction in his hands and caused him to miss several days of work, and which required him to "burn up" approximately 250 hours of his personal time.

32. As a result, Plaintiff filed the Charge of Discrimination referred to above.

33. In June/July 2014, Plaintiff requested a transfer out of the warehouse. Eventually, UDOT facilitated a transfer out of the warehouse to the customer relations team for ports of entry.

34. Plaintiff alleges the pattern of harassment, discrimination and retaliation he has alleged above is ongoing and continuing and constitutes a continuing violation.

**B.     CLAIMS**

## A. Prima Facie Case of Discrimination—Disparate Treatment on the Basis of Race, National Origin and Religion

35. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 34 above as if alleged in full herein.

36. To establish a prima facie case of discrimination based on race, national origin and religion, Plaintiff must establish that: (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) his employer subjected him to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination on the basis of race, national origin and religion.

37. Plaintiff is of the Afghan race, is of Middle Eastern (Afghan) national origin and holds Islamic religious beliefs. He is a member of several protected classes.

38. Plaintiff was qualified for the positions at issue.

39. Plaintiff alleges that Defendant subjected Plaintiff to various adverse employment actions. An adverse employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change

in benefits." *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007) (internal quotation omitted).

      40.    Plaintiff alleges that Defendant subjected Plaintiff to adverse actions when it suspended him for two days in August 2011 and, when shortly after the suspension, moved him from the position of Compliance Officer to Program Manager. He alleges that, thereafter, Defendant gave him fewer responsibilities than other employees in the same position and denied him raises which it gave to other employees in the same position. In addition, Plaintiff alleges that, in August 2012, Defendant passed him over for a promotion.

      41.    As to adverse actions which are within the statute of limitations look-back period, Plaintiff alleges that Gibson and Boschert frequently snubbed him, denied him equal access to training, excluded him from staff meetings and events, and then forced him to request a transfer.

      42.    Plaintiff alleges the act of transferring him, rather than Boschert, and transferring him to a position which required him to perform the type of physically strenuous work he was required to perform in the warehouse was retaliatory. Thus, Plaintiff alleges Defendant has subjected Plaintiff to timely adverse employment actions.

43. Plaintiff alleges the totality of the circumstances, as summarized above, supports an inference that Defendant took such adverse actions against him because of his race, national origin and religion.

44. Plaintiff alleges such conduct was and is a continuing violation. *See National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061 (2002), in which the Supreme Court held:

> Because such a claim is composed of a series of separate acts that collectively constitute an "unlawful employment practice," it does not matter that some of the complained acts fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability.

**B. Prima Facie Case of Harassment—Race, National Origin and Religion**

45. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 44 above as if alleged in full herein.

46. To establish a prima facie case of harassment based on race, national origin and religion, Plaintiff must establish that: (1) he is a member of a protected class; (2) his employer subjected him to unwelcome and unwanted conduct and the conduct complained of was based on his race, race, national origin and religion; and (3) the harassment complained of was sufficiently severe or pervasive as

to alter the terms and conditions of his employment, such as by interfering with his ability to perform his job or by creating a hostile work environment.

47. Plaintiff is a member of the respective protected classes.

48. Plaintiff alleges that Defendant subjected Plaintiff to unwelcome and unwanted conduct and the conduct complained of was based on his race, national origin and religion.

49. Plaintiff alleges that Defendant subjected him to ongoing harassment beginning in 2007 by comments from his supervisors, such as "You're always fasting." "Minorities are taking over America." and "Pork is so tasty. You're really missing out."

50. As to adverse actions which are within the statute of limitations look-back period, Plaintiff alleges that Gibson and Boschert frequently snubbed him and excluded from training opportunities, staff meetings, and other appointments events and then forced him to request a transfer.

51. Plaintiff alleges the comments and treatment towards him were egregious enough and frequent enough so as to rise to the level of being sufficiently severe or pervasive that they altered the terms and conditions of his employment, and made the work environment in which he had to work offensive, intimidating and hostile towards him.

52. Plaintiff alleges such conduct was and is a continuing violation. *See National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061 (2002), in which the Supreme Court held:

> Because such a claim is composed of a series of separate acts that collectively constitute an "unlawful employment practice," it does not matter that some of the complained acts fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability.

**C. Retaliation**

53. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 52 above as if alleged in full herein.

54. To establish a prima facie case of retaliation, Plaintiff must establish: (1) he engaged in protected opposition to discrimination; (2) contemporaneous with or subsequent to the protected activity, his employer subjected Plaintiff to adverse employment actions; and (3) there is a causal connection between the protected activity and the adverse employment actions.

55. A protected activity is one in which the individual has complained about discrimination, filed a Charge of Discrimination or opposed a discriminatory practice.

56. Plaintiff alleges that he engaged in protected opposition to discrimination.

57. Plaintiff alleges that, on several occasions, he complained to a Department of Human Resources representative about what he, in good faith, reasonably believed were comments and actions which were discriminatory in nature, including, but not limited to: in January 2008, about derogatory comments by Gibson, in winter 2011, about room temperature and odor, in May 2012 about being required to pay for a non-pork meal while at a work conference, and in June 2013 about a false accusation that he had altered his performance review/plan.

58. In addition, Plaintiff alleges that on June 14, 2013, Plaintiff sent an e-mail to Defendant complaining that he had been "constantly treated differently because of my religion and ethnicity."

59. Plaintiff's allegations satisfy the first element of his prima facie case of retaliation.

60. Plaintiff alleges that, contemporaneous with or subsequent to his protected activity, Defendant subjected Plaintiff to various adverse employment actions.

61. An adverse employment action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the Plaintiff or others from engaging in protected activity.

62. Plaintiff alleges that, following his June 2013 complaint, Boschert "snubbed" him and excluded him from training sessions, staff meetings, contract meetings/appointments, workshops and events. Based on this behavior, he asked for and was given a transfer.

63. In July 2013, Defendant not only transferred him out of the complex and his "white collar" position, but transferred him into a physically strenuous "blue collar" position in the warehouse. Being transferred to a physically more strenuous job constitutes adverse action.

64. Plaintiff's allegations satisfy the second element of his prima facie case of retaliation.

65. In order to meet the final element, Title VII requires the Plaintiff to establish that, "but for" his/her engaging in the protected activity, the adverse employment action would not have occurred. *University of Tex. Southwestern Medical Center v. Nassar,* 570 U.S. (2013) citing *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167 (2009). Plaintiff alleges that, but for Plaintiff's complaints and Defendant's actions, he would not have needed to be transferred and would not have been

transferred to a more physically strenuous job. Thus, Plaintiff alleges there is a causal connection between his protected activity and the adverse employment actions set forth above.

66. Plaintiff's allegations state a prima facie case that Defendant unlawfully retaliated against him.

67. Plaintiff alleges such conduct was and is a continuing violation. *See National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061 (2002), in which the Supreme Court held:

> Because such a claim is composed of a series of separate acts that collectively constitute an "unlawful employment practice," it does not matter that some of the complained acts fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability.

## IV. DAMAGES

68. Mr. Mullahkhel alleges Defendant's actions and inactions have caused him various losses, injuries and other damages, including lost wages, lost benefits, lost job satisfaction and potential, physical injuries, emotional distress and damages to his promotability and career path.

## V. RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1. Declaring that Defendant discriminated against Mr. Mullahkhel on the basis of his race, national origin and religion, in violation of Title VII of the Civil Rights Act;

2. Declaring that Defendant retaliated against Mr. Mullahkhel for engaging in protected activity, in violation of Title VII;

3. Awarding Mr. Mullahkhel "make whole" relief, including awarding Mr. Mullahkhel any lost wage and lost benefit differential from the time Defendant transferred Mr. Mullahkhel until Mr. Mullahkhel secures a position comparable to what he had prior to the transfer, or for a period of five years, whichever occurs first;

4. Reinstatement/Restoration of Mr. Mullahkhel into his previous position as Research Analyst III/Program Manager or another similar position, together with all pay and benefits of such position as though he had never los them;

5. Restoration of Mr. Mullahkhel to his previous shift of Tuesday through Thursday, 9:00 a.m. to 7:00 p.m., and Fridays being able to telecommute from home (with Mondays off);

6. Judgment for wages, step increases, etc., Mr. Mullahkhel lost since the 2013 transfer into the warehouse;

7. Restoration of approximately all 300 hours of leave used up due to carpal tunnel injury sustained while and because of the position in the warehouse;

8. Compensation/Damages for emotional distress, mental anguish, flashbacks, stress filled days and sleepless nights;

9. Awarding Mr. Mullahkhel his reasonable attorney's fees and costs;

10. Awarding Mr. Mullahkhel such other relief as may be just and equitable.

DATED this 31st day of August, 2016.

        /s/ David J. Holdsworth
        David J. Holdsworth
        *Attorney for Plaintiff*

## VERIFICATION

Mumtaz Abdul Mullahkhel, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of his own knowledge, except as to those matters alleged on information and belief which he believes to be true.

                                             /s/ Mumtaz Abdult Mullahkhel
                                             Mumtaz Abdul Mullahkhel

SUBSCRIBED AND SWORN to before me, a Notary Public, this ____ day of August, 2016.

                                             _____
                                             NOTARY PUBLIC

MY COMMISSION EXPIRES:     RESIDING AT: _____

                                             _____